DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas.
 {¶ 2} In 1993, appellant, John F. Umbel, was found guilty by a three judge panel of aggravated murder; a violation of R.C. 2903.01; rape, a violation of R.C. 2907.02; kidnapping, a violation of R.C. 2905.01; and felonious sexual penetration, a violation of *Page 2 
former R.C. 2907.12, repealed September 3, 1996. On his conviction for aggravated murder, appellant was sentenced to life in prison with the possibility of parole after 30 years. Appellant was sentenced to not less than ten years nor more than 25 years for the kidnapping, and life imprisonment for the rape and felonious sexual penetration. The sentences were ordered to be served consecutively.[1]
 {¶ 3} Appellant's convictions stemmed from his rape and murder of a three-year-old boy who resided in a trailer adjacent to the apartment complex where appellant lived. Appellant lured the child into his apartment with the promise of candy. Instead, when he had the victim in his apartment, appellant engaged in sexual activities with the boy. When the child cried, appellant beat him with his fists, but the boy continued crying. Appellant then placed a pillow over the boy's face, and tightened and knotted a handkerchief around his neck. While the child still cried, appellant continued engaging in sexual activity with him. He then struck the child violently in the left frontal lobe of his head, duct taped his hands, placed him in a trash bag, and put him inside two other trash bags. He placed trash items, as well as the duct tape and the child's clothing in the trash bag to hide the outline of the body.
 {¶ 4} The next day the police searched the entire area looking for the three-year-old but could not find him. Frightened, appellant contacted the police, confessed to raping and killing the child, and told them where to find the boy's body. He was found *Page 3 
dead in the bag that appellant placed near the corner of a fence in the apartment complex parking lot. His death resulted from strangulation.
 {¶ 5} Appellant was ordered to serve his sentence at Allen Correctional Institution in the Residential Treatment Unit. During his incarceration at this institution, appellant persistently "caused quite a bit of trouble on the unit" including the harassment of Tamatha Martin, a correctional officer on the unit. Appellant would peek through his cell door at her, and if Officer Martin was alone at her desk, he would come over quickly and talk to her and tell her that she was pretty. On the last encounter between the two, appellant told Martin that she was beautiful and "he was going to get ahold of [her] before he left the unit." Martin perceived this last statement as a threat and locked appellant in his cell. Martin avoided any one-on-one contact with appellant after that incident.
 {¶ 6} In August 2004, the Ohio Department of Rehabilitation and Correction screened appellant pursuant to House Bill 180 and asked the trial court to determine that he is a sexual predator pursuant to R.C.2950.09(C). After holding a hearing and reviewing all the exhibits submitted in that hearing, the trial court entered a judgment classifying appellant as a sexual predator under R.C. Chapter 2950.
 {¶ 7} The court's judgment, however, contained inaccurate factual findings related to the manner in which appellant disposed of his child victim's body after he murdered him. Specifically, the trial court stated, in material part: *Page 4 
 {¶ 8} "In response to [the victim's] crying, Mr. Umbel killed him, cut the body up into pieces, and then placed it into trash bags.
 {¶ 9} "Mr. Umbel exhibited extreme cruelty when he molested his three-year-old victim, severely battered him and chopped his body up and placed it into garbage bags."
 {¶ 10} As a result of these factual inaccuracies, appellee filed a motion to correct the record, asking the court to remove any mention of dismemberment from its judgment. Appellant objected on the basis that the requested corrections did not meet the purpose of a nunc pro tunc order and, therefore, appellee's request was, in essence, a motion for reconsideration. The trial court disagreed and entered a nunc pro tunc judgment containing the following corrections:
 {¶ 11} "In response to [the victim's] crying, appellant killed him.
 {¶ 12} "Mr. Umbel exhibited extreme cruelty when he molested his three-year-old victim, severely battered him, and disposed of his body in trash bags in the garbage."
 {¶ 13} The court also quoted from the testimony of John Helm, who had investigated the boy's disappearance and murder for the Wood County Prosecutor's Office. Helm, who testified at the hearing on appellee's motion, described exactly the manner in which appellant disposed of the child's body.
 {¶ 14} Appellant appeals the judgment of the trial court and sets forth the following assignments of error:
 {¶ 15} "The trial court erred in finding clear and convincing evidence that appellant is a sexual predator. *Page 5 
 {¶ 16} "The trial court erred to the prejudice of appellant by issuing a nunc pro tunc entry and order."
 {¶ 17} Because our disposition of appellant's second assignment of error may affect our decision on his first assignment of error, we shall consider these assignments of error in reverse order.
 {¶ 18} In his second assignment of error, appellant asserts that the lower court's nunc pro tunc entry is not a correction to make the record speak the truth, but was "clearly" a review of the court's former judgment and the correction of "errors of judgment." We disagree.
 {¶ 19} Crim.R. 36 permits a court to, at any time, correct "[clerical mistakes in judgments, orders or other parts of the record arising by oversight or omission * * *." A "clerical mistake" is a "mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." State ex. rel. Cruzado v.Zaleski, 111 Ohio St.3d 353, 2006-Ohio-5797, ¶ 19, citing State v.Brown (2000), 136 Ohio App.3d 816, 819-820. Thus, a trial court has the authority to correct factual errors in a judgment. State v. Taylor
(1997), 78 Ohio St.3d 15, 23, 1997-Ohio-243 (citations omitted). In the present case, it is clear upon the record that the court made a factual mistake in its judgment entry when describing the method by which appellant disposed of the child's body. This mistake did not involve any legal decision on the part of the court. Therefore, the court below could enter a nunc pro tunc judgment reflecting the actual *Page 6 
facts related to this issue as adduced at the hearing on this matter. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 20} In his first assignment of error, appellant maintains that the trial court's judgment classifying him as a sexual predator is not supported by clear and convincing evidence.
 {¶ 21} As applicable to this cause, R.C. 2950.01(E)(1) defines a sexual predator as a person who has been convicted of or pleaded guilty to a sexually oriented offense that is not registration exempt "and is likely to engage in the future in one or more sexually oriented offenses." The definition of a "sexually oriented offense" includes rape. See R.C. 2950.01(D)(1). The sentencing judge is required to hold a hearing to determine whether the offender is a sexual predator. R.C.2950.09(B)(1)(a). At that hearing, both the state and the offender may present evidence, call and examine witnesses, cross-examine witnesses, and the offender may testify. R.C. 2950.09(B)(2). The central concern of the legislature in enacting R.C. 2950.09 is to protect the public.State v. Eppinger, 91 Ohio St.3d 158, 165; 2001-Ohio-247. Thus, the main issue to be determined in a sexual predator hearing is the likelihood that the defendant will re-offend. Id. at 166.
 {¶ 22} In making this determination, a court must consider the following factors: (1) the offender's age; (2) the offender's prior criminal record, including, but not limited to, all sexual offenses; (3) the age of the victim; (4) whether the offense involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim; (6) if the *Page 7 
offender that has previously been convicted of a sex offense or a sexually oriented offense participated in available programs for sexual offenders; (7) mental illness or disability of the offender or victim; (8) if the offender's conduct was a demonstrated pattern of abuse; (9) if the offender displayed cruelty or made threats of cruelty during the commission of the sexually oriented offense; and (10) any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3). There is no requisite number of these factors that must apply before a trial court may find that an offender is a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be appropriate. State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 19; State v. Vance, 10th Dist. No. 06AP-1016, 2007-Ohio-4407, ¶ 96.
 {¶ 23} The state is required to establish that an offender is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(4). Clear and convincing evidence is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469. Nonetheless, because sexual predator proceedings are civil in nature, our standard of review on appeal is civil manifest weight. State v. Wilson,2007-Ohio-2202, ¶ 32. Therefore, we must affirm the trial court's judgment if it is supported by some competent, credible evidence. Id. at ¶ 41. That is, we must determine whether some competent, credible evidence exists to support the trial court's finding that the state proved, by clear and convincing evidence, that appellant is a sexual predator. Id. at ¶ 42. *Page 8 
 {¶ 24} In the case before us, the trial court considered: (1) the ages of appellant, who was 35 years old at the time of the rape and murder, and his victim, who was three years old at that time; (2) appellant's substantial criminal history; (3) the use of candy to lure his victim into appellant's apartment; (4) appellant's extensive history of mental illness; (5) the extreme cruelty used by appellant in battering his victim and then placing his body in garbage bags; and (5) appellant's sexually oriented remark made to Tamatha Martin, the corrections officer at Allan Correctional Institution.
 {¶ 25} Appellant argues that his criminal history consists mainly of behavior, such as breaking into a church to steal clothes, that was "innocuous" and, apparently, should not be considered criminal behavior. We do not agree. Appellant's extensive criminal history includes time spent in prison in 1991, in addition to the sentences imposed in 1993. In 1994, he assaulted another inmate with the intent to kill him. Finally, the statute permits consideration of all criminal offenses — not just sexually oriented criminal offenses.
 {¶ 26} Appellant also has a history of mental illness that started when he was in childhood and continued until the time of the sexual predator hearing. The evidence offered in appellee's exhibits reveals that appellant spent his early childhood in several different foster homes. He was generally removed from a placement because the foster parent(s) could not cope with his behavior. In one of the foster homes in which he was placed, it was noted that appellant was very destructive, "couldn't keep his hands off his playmates," and started ten fires. As he grew older, appellant began "sexual acting out" *Page 9 
with other children. By the time he was 11 years old, appellant was placed in a "Children's Center" where he would ask the other boys to "manipulate his genitals." When a boy refused, appellant would climb into bed with that child and put his hands around the boy's throat.
 {¶ 27} The following year, 1968, appellant was committed to Tiffin State Hospital, where he remained until 1976. His mental problems, diagnosed as schizophrenia and borderline personality disorder, worsened. Appellant was in and out of mental health facilities, in addition to prison, over the next several years. His mental illness had not abated at the time that he raped and murdered the three-year-old. At that time and after he was imprisoned, appellant would beat his head against, for example, a wall, in order to "get the bad thoughts out." After the encounter with Officer Martin, appellant hit himself in the head. When asked why he had done this by a staff member, appellant replied that he could not help how he felt about Officer Martin ("She is so damn pretty, and I am so horny."); therefore, he hit himself to keep these thoughts away.
 {¶ 28} Although luring a child with candy is not exactly the same as impairing a victim by the use of alcohol or drugs, it is comparable in the sense that this victim was a three year-old-child who could be lured by that means. Moreover, luring a child with candy could fall within the confines of the factor listed in R.C. 2905.09(B)(3)(j) as any behavioral characteristic that contributed to appellant's conduct, specifically, having the knowledge that a three-year-old child would follow him if appellant offered him some candy and using that knowledge to engage in illicit sexual conduct with the child. *Page 10 
 {¶ 29} It is undisputed that appellant not only raped and murdered his victim, but did so in an extremely cruel manner. Furthermore, it is also undisputed that appellant made the sexual remark to Officer Martin, who, at the time of the remark, felt threatened. Based upon the foregoing, we find that there is some competent, credible evidence in the record of this cause to establish that the state proved, by clear and convincing evidence, that appellant would, in all likelihood re-offend, and, thus, is a sexual predator. Appellant's first assignment of error is found not well-taken.
 {¶ 30} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J. CONCUR.
[1] Appellant appealed his convictions to this court. We affirmed the panel's judgment. See State v. John F. Umbel (Mar. 25, 1994), 6th Dist. No. WD-93-023. *Page 1